UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as United States Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHIQUITA BROOKS-LASURE, in her official capacity as Administrator of the Centers for Medicare & Medicaid Services; and CENTERS FOR MEDICARE & MEDICAID,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:21-cv-01395 (CJN) |

**MEMORANDUM IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

Introduction.................................................................................................................. 1

Background and Procedural History ...................................................................... 2

    I.    The Medicaid Drug Rebate Program ........................................................ 2

    II.    2020 Rebate Rule ........................................................................................ 4

    III.   This Action .................................................................................................. 5

Standard of Review ................................................................................................ 6

Argument................................................................................................................ 6

    I.    Plaintiff fails to establish associational standing because it does not identify any specific members who have standing to challenge the Rebate Rule. ......................... 7

    II.    Plaintiff fails to establish organizational standing because it does not explain how the Rebate Rule has harmed its operational activities....................................................11

Conclusion ............................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Am. Chemistry Council v. Dep't of Transp.*,

468 F.3d 810 (D.C. Cir. 2006) ...................................................................................... 8

*Am. Nat'l Ins. Co. v. FDIC*,

642 F.3d 1137 (D.C. Cir. 2011) ..................................................................................2, 5

*Browning v. Clinton*,

292 F.3d 235 (D.C. Cir. 2002) ...................................................................................... 6

*Chamber of Commerce of U.S. v. EPA*,

642 F.3d 192 (D.C. Cir. 2011) ...................................................................................... 8

*Cookeville Reg'l Med. Ctr. v. Leavitt*,

531 F.3d 844 (D.C. Cir. 2008) ...................................................................................... 2

*\*Ctr. for Biological Diversity v. Nishida*,

No. CV 21-119 (RDM), 2021 WL 827189 (D.D.C. Mar. 4, 2021) ........................................ 7

*Ctr. for Democracy & Tech. v. Trump*,

507 F. Supp. 3d 213 (D.D.C. 2020) ...................................................................................10

*Ctr. for Responsible Sci. v. Gottlieb*,

346 F. Supp. 3d 29 (D.D.C. 2018) ...................................................................................12

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,

878 F.3d 371 (D.C. Cir. 2017) ...................................................................................12

*\*Food & Water Watch, Inc. v. Vilsack*,

808 F.3d 905 (D.C. Cir. 2015) ...................................................................................11, 12

*Freedom Watch v. McAleenan*,

    442 F. Supp. 3d 180 (D.D.C. 2020) ...............................................................5, 12, 13

*Frew ex rel. Frew v. Hawkins*,

    540 U.S. 431 (2004)............................................................................................ 2

*Gonzalez Boisson v. Pompeo*,

    459 F. Supp. 3d 7 (D.D.C. 2020) ......................................................................2, 5

*Havens Realty Corp. v. Coleman*,

    455 U.S. 363 (1982)..........................................................................................11

*\*Hunt v. Wash. State Apple Advert. Comm'n*,

    432 U.S. 333 (1977)........................................................................................7, 10

*Int'l Acad. of Oral Med. & Toxicology v. U.S. Food & Drug Admin.*,

    195 F. Supp. 3d 243 (D.D.C. 2016) ..................................................................13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

    511 U.S. 375 (1994)........................................................................................... 5

*Kowalski v. Tesmer*,

    543 U.S. 125 (2004)........................................................................................... 9

*Lance v. Coffman*,

    549 U.S. 437 (2007)........................................................................................... 6

*Life Ins. Co. of Am.*,

    511 U.S. 375 (1994)........................................................................................... 5

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992)........................................................................................5, 8

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales,

  468 F.3d 826 (D.C. Cir. 2006) ..................................................................9, 10, 11

Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.,

  981 F.3d 1360 (Fed. Cir. 2020) ........................................................................ 8

Nat'l Taxpayers Union, Inc. v. United States,

  68 F.3d 1428 (D.C. Cir. 1995) ........................................................................11

Park Irmat Drug Corp. v. Express Scripts Holding Co.,

  911 F.3d 505 (8th Cir. 2018) ........................................................................3, 4

People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture ("PETA"),

  797 F.3d 1087 (D.C. Cir. 2015) ......................................................................11

Petro-Chem Processing, Inc. v. E.P.A.,

  866 F.2d 433 (D.C. Cir. 1989) ........................................................................10

Pharm. Care Mgmt. Ass'n v. D.C.,

  522 F.3d 443 (D.C. Cir. 2008) ........................................................................ 3

Pharm. Research & Mfrs. of Am. v. Dist. of Columbia,

  406 F. Supp. 2d 56 (D.D.C. 2005) ..................................................................7, 8

Pharm. Research & Mfrs. of Am. v. Walsh,

  538 U.S. 644 (2003) ......................................................................................2, 3

Pub. Citizen v. Trump,

  297 F. Supp. 3d 6 (D.D.C. 2018) ....................................................................7–8

Sierra Club v. Envtl. Prot. Agency,

  754 F.3d 995 (D.C. Cir. 2014) ........................................................................ 7

*Sorenson Commc'n, LLC v. FCC,

　　897 F.3d 214 (D.C. Cir. 2018) ...................................................................................... 7

*Summers v. Earth Island Inst.,

　　555 U.S. 488 (2009) ..................................................................................................... 7

*TransUnion LLC v. Ramirez,

　　141 S. Ct. 2190 (2021) ....................................................................................... 2, 6, 13

Turlock Irrigation Dist. v. FERC,

　　786 F.3d 18 (D.C. Cir. 2015) ...................................................................................... 12

Warth v. Seldin,

　　422 U.S. 490 (1975) ................................................................................................ 9, 10

Weingarten v. Devos,

　　468 F. Supp. 3d 322 (D.D.C. 2020) ........................................................................... 12

**Statutes**

5 U.S.C § 706(2)(A) ............................................................................................................... 5

42 U.S.C. § 1396 .................................................................................................................... 2

42 U.S.C. § 1396a ................................................................................................................... 2

42 U.S.C. § 1396b(i)(10) ....................................................................................................... 2

42 U.S.C. § 1396d(a)(12) ....................................................................................................... 2

42 U.S.C. § 1396r-8(a)(1) ...................................................................................................... 3

42 U.S.C. § 1396r-8(c)(1) ...................................................................................................... 3

Omnibus Budget Reconciliation Act of 1990,

　　Pub. L. No. 101-508, 104 Stat. 1388 (1990) ............................................................... 2

**Regulations**

42 C.F.R. § 447.505(c)(8) ................................................................................3, 4

Medicaid Program; Establishing Minimum Standards in Medicaid State Drug Utilization Review
(DUR) and Supporting Value-Based Purchasing (VBP) for Drugs Covered in Medicaid,
Revising Medicaid Drug Rebate and Third Party Liability (TPL) Requirements,
85 Fed. Reg. 37,286 (June 19, 2020).................................................................. 4

Medicaid Program; Establishing Minimum Standards in Medicaid State Drug Utilization Review
(DUR) and Supporting Value-Based Purchasing (VBP) for Drugs Covered in Medicaid,
Revising Medicaid Drug Rebate and Third Party Liability (TPL) Requirements,
85 Fed. Reg. 87,000 (Dec. 31, 2020) .................................................................. 5

**Other Authorities**

The Doctrine of Standing as an Essential Element of the Separation of Powers,
17 SUFFOLK U. L. REV. 881 (1983) ..................................................................... 2

**INTRODUCTION**

To participate in Medicaid, drug manufacturers must pay rebates to states based on the difference between the average market price of their products and the "best price" they offer to certain entities. This requirement—implemented in the Medicaid Drug Rebate Program (MDRP)—is based on the commonsense premise that drug manufacturers should not profit by charging taxpayers higher prices than they charge others.

Some drug manufacturers offer "patient assistance programs" that give patients discounts on brand-name drugs. In practice, those discounts do not always flow entirely to patients—health plans, with the help of third-party pharmacy benefits administrators, often capture the discounts by declining to allow them to offset patients' out-of-pocket costs, like deductibles and copayments. The portion of the rule at issue here, known as the Rebate Rule, clarifies that drug manufacturers' "best price" calculations must include such discounts for Medicaid rebate purposes, unless the manufacturers ensure that they flow entirely to patients.

Plaintiff, the Pharmaceutical Research and Manufacturers of America (PhRMA), a lobbying organization that represents the general interests of leading pharmaceutical drug manufacturers, challenges the Rebate Rule. It claims that the Rule exceeds the agency's statutory authority, contending that the Rule will require manufacturers to either eliminate discounts or pay increased rebates. But it lacks standing to bring such a claim. To start, PhRMA fails to explain how eliminating discounts would actually harm drug manufacturers, rather than increase their revenues on net. But the Court need not even reach that question, as—perhaps tellingly— there is no drug manufacturer here making such an assertion: While PhRMA sues on behalf of its members, it does not name *any* of them—a fundamental prerequisite to establish associational standing. Nor does it allege any cognizable injury to itself as an organization. Simply put,

PhRMA does not "sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 SUFFOLK U. L. REV. 881, 882 (1983)). The Complaint must therefore be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    The Medicaid Drug Rebate Program

Medicaid is a "cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004); *see* 42 U.S.C. § 1396, *et seq*. To participate, a state must have a plan for medical assistance that has been approved by the Centers for Medicare & Medicaid Services (CMS). 42 U.S.C. § 1396a. "The federal government shares the cost of providing assistance if the state Medicaid plan meets the regulations set out in subchapter XIX of the Social Security Act." *Cookeville Reg'l Med. Ctr. v. Leavitt*, 531 F.3d 844, 845 (D.C. Cir. 2008).

As part of its Medicaid plan, a state may offer outpatient prescription drug coverage. 42 U.S.C. § 1396d(a)(12). To manage the increasing costs of prescription drugs, Congress conditioned eligibility for Medicaid payment for covered outpatient drugs on manufacturers agreeing to participate in the Medicaid Drug Rebate Program (MDRP) by entering into rebate agreements with Secretary of HHS. *See* Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 4401, 104 Stat. 1388 (codified as amended at 42 U.S.C. § 1396r-8); *see also* 42 U.S.C. § 1396b(i)(10); *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 649 (2003);

2

Compl. ¶ 23, ECF No. 1.[1] Under these agreements, manufacturers rebate to states part of the cost of the drugs paid for under the state's Medicaid plan. 42 U.S.C. § 1396r-8(a)(1), (b)(1)(A). In exchange, Medicaid pays for all covered outpatient drugs produced by that manufacturer, with some exceptions. *Pharm. Res. & Mfrs. of Am.*, 538 U.S. at 652. The MDRP is designed to "require[] drug manufacturers to provide prescription drugs to state Medicaid programs at prices at least as favorable as those given to commercial purchasers in return for [f]ederal [f]inancial [p]articipation . . . being made available to the States for the company's products." Compl. ¶ 23. The rebate amount is based on the difference between a drug's "average manufacturing price" and the lowest available price for the drug on the commercial market, *i.e.*, the "best price." 42 U.S.C. § 1396r-8(c)(1).

Since the MDRP rebate to states depends in part on the "best price" for the drug on the market, the commercial discounts received—whether directly or indirectly—by best price eligible entities for drugs are relevant to the rebate calculation. According to Plaintiff, drug manufacturers often set up "patient assistance programs" to help non-Medicaid patients pay their out-of-pocket costs for certain prescription drugs. *See* Compl. ¶¶ 32–36. And regulations already in effect allow manufacturers to exclude such discounts from their "best price" calculation "to the extent that the full value of the discount is passed on to the consumer and the pharmacy, agent, or other entity does not receive any price concession." 45 C.F.R. § 447.505(c)(8); *see also id.* § 447.505(c)(9)–(12). However, health insurance plans, often working with pharmacy benefit

---

[1] Defendants assume Plaintiff's well-pleaded allegations as true for the purposes of this motion. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *see also, e.g., Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 11 (D.D.C. 2020).

managers, [2] sometimes do not count the manufacturer's assistance towards the insured patient's deductible or out-of-pocket maximum. *Id.* ¶ 38. This sort of policy is sometimes referred to as an "accumulator adjustment program." *Id.* ¶¶ 38–39. As a result, the patient does not receive the full value of the manufacturer discount, often having to pay the equivalent of the discount amount in additional out-of-pocket costs after the deductible is reached, frequently to his or her great surprise. *Id.*; *see also id.* ¶ 4.

## II.    2020 Rebate Rule

In June 2020, HHS issued a notice of proposed rulemaking (NPRM) to address, *inter alia*, "the impact of accumulator adjustment programs on the Best Price determination" for MDRP purposes. Compl. ¶ 40; Medicaid Program; Establishing Minimum Standards in Medicaid State Drug Utilization Review (DUR) and Supporting Value-Based Purchasing (VBP) for Drugs Covered in Medicaid, Revising Medicaid Drug Rebate and Third Party Liability (TPL) Requirements, 85 Fed. Reg. 37,286 (June 19, 2020).

In the NPRM, HHS noted that some manufacturers "do not monitor . . . how the benefits of their manufacturer-sponsored assistance programs are applied when an individual has health plan coverage" and nevertheless exclude the discounts in calculating the "best price" for MDRP purposes despite preexisting regulations that advise otherwise. 42 C.F.R. § 447.505(c)(8); *see*

---

[2] "Pharmacy benefit managers [PBMs] act as 'middlemen' hired by health benefit providers . . . to provide prescription drug benefit administration and management services." *Pharm. Care Mgmt. Ass'n v. D.C.*, 522 F.3d 443, 445 (D.C. Cir. 2008). "A PBM is a third-party administrator of prescription drug programs. PBMs process and pay prescription drug claims made by pharmacies and patients. PBMs also negotiate drug discounts with pharmaceutical manufacturers, handle pharmacy benefits for health plans and self-insured entities, and develop lists of drugs that are approved for reimbursement." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 511 (8th Cir. 2018).

*also id.* § 447.505(c)(9)–(12). Therefore, HHS proposed to revise its regulations to expressly require that "the manufacturer ensures the full value of the assistance or benefit is passed on to the . . . patient" before the manufacturer excludes the discount from its MDRP "best price" calculation. Compl. ¶ 41; 85 Fed. Reg. at 37,299.

After reviewing public comments, HHS adopted its proposal in a Final Rule published in December 2020. Compl. ¶ 43; Medicaid Program; Establishing Minimum Standards in Medicaid State Drug Utilization Review (DUR) and Supporting Value-Based Purchasing (VBP) for Drugs Covered in Medicaid, Revising Medicaid Drug Rebate and Third Party Liability (TPL) Requirements, 85 Fed. Reg. 87,000 (Dec. 31, 2020) (the Rebate Rule). In the preamble, HHS responded to comments from drug manufacturers about the rule's impact on patients and its legal authority to make these revisions. Compl. ¶¶ 44–48; *see also* 85 Fed. Reg. at 87,049–57. HHS also explained that in light of industry concerns about implementing the Rule during the COVID-19 pandemic, the agency would delay the effective date of the rule until January 1, 2023. *Id.* at 87,053.

## III.    This Action

Five months after the Rebate Rule was published, PhRMA, which identifies itself as the drug manufacturing industry's "principal policy advocate," Compl. ¶ 18, ECF No. 1, filed this case. It alleges that the Rebate Rule forces its members to "either risk paying higher Medicaid rebates . . . or forego offering financial assistance to patients," *id.* ¶ 65, and creates a new compliance burden on drug manufacturers, *id.* ¶ 66. Plaintiff brings a single cause of action under the APA, alleging that the Rebate Rule exceeds the agency's statutory authority and is "not in accordance with law." Compl. ¶ 71; 5 U.S.C § 706(2)(A), (C).

5

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish the Court's jurisdiction through sufficient allegations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Federal courts are courts of limited jurisdiction, and it is generally presumed that a cause lies outside this limited jurisdiction.'" *Freedom Watch v. McAleenan*, 442 F. Supp. 3d 180, 185 (D.D.C. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When considering such a motion, the Court must accept all well-pleaded allegations as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court need not, however, accept inferences that are unsupported by facts alleged in the complaint or that amount to mere legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ARGUMENT

This Court lacks subject-matter jurisdiction because Plaintiff lacks Article III standing. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) ("Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies" . . . [o]ne component of [which] is standing . . . ."); *TransUnion*, 141 S. Ct. at 2203. Not only does PhRMA fail to sufficiently explain how any of its members are actually harmed by the Rebate Rule, but—more fundamentally—it neglects to name even one of them, much less identify any cognizable injury to itself as an organization. It thus fails to establish either associational or organizational standing.[3]

---

[3] Defendants respectfully note that they do not intend to file a certified copy of the index of the Administrative Record with this motion. Local Civil Rule 7(n)(1), which refers to such a filing, presupposes that the "dispositive motion" at issue implicates the contents of the administrative record. *See* LCvR 7(n) cmt.1 ("This rule is intended to assist the Court in cases involving a voluminous record . . . by providing the Court with copies of relevant portions of the

**I.     Plaintiff fails to establish associational standing because it does not identify any specific members who have standing to challenge the Rebate Rule.**

Plaintiff's standing allegations focus on the Rebate Rule's purported impact on its members. Compl. ¶¶ 64–67. To assert standing on behalf of its members, known as associational standing, an association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Sierra Club v. Envtl. Prot. Agency*, 754 F.3d 995, 999 (D.C. Cir. 2014); *Pharm. Research & Mfrs. of Am. v. Dist. of Columbia*, 406 F. Supp. 2d 56, 62 (D.D.C. 2005), *aff'd sub nom. Biotechnology Indus. Org. v. Dist. of Columbia*, 496 F. 3d 1362 (Fed. Cir. 2007). Here, the Court need not reach the last two elements, because Plaintiff clearly fails the first prong.

It is well established that an organization asserting standing on behalf of its members must, as threshold matter, "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). "[I]t is not enough to aver that unidentified members have been injured." *Sorenson Commc'n, LLC v. FCC*, 897 F.3d 214, 224 (D.C. Cir. 2018). "Instead, at the very least, the

---

record relied upon in any dispositive motion."). Defendants' motion does not rely on the contents of the administrative record. Accordingly, consistent with the Rule's intent, Defendants will be prepared to file such an index on summary judgment if the case proceeds to that stage. *See, e.g.*, *Carroll v. DOL*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017). In the alternative, Defendants request to waive compliance with any record-production obligation under Local Rule 7(n) because the record is not needed to decide this motion and resolving this motion may dispose of Plaintiff's claim. *See, e.g.*, *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014).

identity of the party suffering an injury in fact," and who would thus have standing to bring suit individually, "must be firmly established." *Pub. Citizen v. Trump*, 297 F. Supp. 3d 6, 19 (D.D.C. 2018) (internal alterations and quotation marks omitted); *see also Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 199–200 (D.C. Cir. 2011).

Yet Plaintiff fails to identify *any* specific member that has standing. *See generally* Compl. Instead, it states in conclusory fashion that its members "are the country's leading manufacturers" and that "[n]umerous PhRMA members" provide drug discounts to non-Medicaid patients "and therefore will be adversely affected" by the Rebate Rule. Compl. ¶ 18; *see also* Compl. ¶ 65 (stating that the Rebate Rule affects unnamed "PhRMA members"). But "the questions of who specifically will suffer harm—and when, how, or why they will suffer it— remain unanswered. The associational-standing doctrine demands more." *Ctr. for Biological Diversity v. Nishida*, No. CV 21-119 (RDM), 2021 WL 827189, at *1–2 (D.D.C. Mar. 4, 2021); *see also Pub. Citizen*, 297 F. Supp. 3d at 18 (finding no associational standing where the plaintiffs "made no effort—either in their complaint or in the multiple declarations they have submitted—to identify a specific member who has suffered, or who is likely to suffer, an injury in fact"). PhRMA's failure to provide the details of even a single member injured by the rule compels dismissal of its suit.[4]

-----

[4] Even the case Plaintiff cites in paragraph 64 of the Complaint in support of it standing allegations, *PhRMA*, 406 F. Supp. 2d 56, notes that to successfully assert associational standing, "the organization must allege sufficient facts to establish that at least one member is threatened with a specific injury or has suffered an injury in fact," *id.* at 62. In that case, the court relied on evidence from multiple PhRMA declarants to conclude that PhRMA had established standing. *Id.*; *see also Biotechnology Indus. Org.*, 496 F.3d at 1371 (specifying on appeal that two PhRMA members that had declared concrete, imminent injuries as a result of the challenged statute). That the case was decided on summary judgment is no matter; Plaintiff's failure to provide *any* specifics about any particular member's injury-in-fact here deprives it of associational standing.

Even if PhRMA had named a member in its Complaint, its allegations would still be insufficient because the harms it asserts are not cognizable and not fairly traceable to the Rebate Rule. To establish an Article III injury, Plaintiff bears the burden to show (1) an "actual or imminent," "concrete and particularized" injury-in-fact to one or more of its members, (2) a "causal connection," that is, "fair[] traceab[ility]," between the injury and the challenged action, and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. As a general rule, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Further, a plaintiff lacks standing when its alleged injury is self-inflicted. *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (explaining that a self-inflicted injury "does not amount to an 'injury' cognizable under Article III" and "would not be fairly traceable to the defendant's challenged conduct" (internal citations omitted)). Plaintiff fails these tests here.

PhRMA asserts two harms allegedly attributable to the Rebate Rule. First, it claims that its members must "either risk paying higher Medicaid rebates . . . or forego [sic] offering financial assistance to patients," Compl. ¶ 65, because "manufacturers will be required . . . to pay significantly higher Medicaid rebates on the basis of financial assistance they provide to patients," *id*. ¶ 13. Second, Plaintiff claims that the Rebate Rule imposes a "new compliance burden on manufacturers." Compl. ¶ 23.

---

*Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006) ("Our standard has never been that it is *likely* that at least one member has standing. At the very least, the identity of the party suffering an injury in fact must be firmly established."); *see also Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360, 1370 (Fed. Cir. 2020).

9

But Plaintiff does not explain why forgoing "offering financial assistance to patients," and thereby avoiding Plaintiff's perceived compliance burdens, constitutes a cognizable harm. *Id.* ¶ 65; *see also id.* ¶¶ 64–67. Manufacturers are not required to offer financial assistance to patients by discounting their drug prices, and the only harm Plaintiff alleges from not offering a discount is to the patient, not to drug manufacturers. *See id.* ¶ 1 (arguing that the Rebate Rule "would be harmful to patient health"); *id.* ¶ 13 ("The upshot for patients is that manufacturer assistance . . . may dry up."). It appears that, on this score, Plaintiff is attempting to assert claims not on behalf of the unnamed drug manufacturers it represents, but on behalf of the patients with which the manufacturers do business. In the absence of a stated injury suffered by the manufacturers themselves, and given its failure even to attempt to establish any of the prerequisites to prudential third-party standing, Plaintiff has no injured party to represent in this lawsuit. *See Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004); *Warth*, 422 U.S. at 499; *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 224 (D.D.C. 2020).

Indeed, by not offering discounts, drug manufacturers could not only avoid any compliance costs created by the Rebate Rule but also increase revenues by charging a non-discounted price for their prescription drugs. In the absence of an explanation from Plaintiff for why it its members must continue providing patient discounts, Plaintiff's asserted "Hobson's choice," Compl. ¶ 65, appears illusory, and any manufacturer's decision to continue to provide patient discounts and incur any compliance costs and/or the risk of not having those discounts excluded from the MDRP "best price" calculation looks like a self-inflicted injury *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438 (D.C. Cir. 1989) (Where "members choosing geologic repositories can avoid the threatened injury by choosing safer methods . . . we cannot deem them injured, in the sense relevant under controlling precedent, by their own choice.");

10

*Gonzales*, 468 F.3d 831 (Where a plaintiff "has within its grasp an easy means for alleviating" its asserted injury and "has *chosen* to remain in the lurch, it cannot demonstrate an injury sufficient to confer standing." (emphasis in original)).

## II.     Plaintiff fails to establish organizational standing because it does not explain how the Rebate Rule has harmed its operational activities.

To the extent that Plaintiff's allegations might be read to attempt to assert organizational standing, they too must fail.[5] To establish standing to sue on its own behalf, an organization must satisfy the same Article III "standing requirements applied to individuals." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982)). As a starting point, it must show that it has suffered an injury-in fact by alleging "more than a frustration of its purpose." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). The D.C. Circuit "has distinguished between organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised," noting that the latter is "'the type of abstract concern that does not impart standing." *Id.* (quoting *Nat'l Taxpayers*, 68 F.3d at 1433). For PhRMA to show organizational standing, it must establish "'a concrete and demonstrable injury to its activities.'" *Id.* (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture (PETA)*, 797 F.3d 1087, 1093 (D.C. Cir. 2015)).

---

[5] Plaintiff's standing allegations focus on the elements of associational standing. *See* Compl. ¶ 64; *see also id.* ¶¶ 64–67; *Hunt*, 432 U.S. at 343. But to the extent Plaintiff's allegations that "the interests at stake are germane to PhRMA's mission" could be construed as supporting the theory of organizational standing, Compl. ¶ 67, Defendants analyze them as such.

This determination requires "a two-part inquiry." *Id.* The Court asks, "first, whether the agency's action or omission to act injured the organization's interest and, second, whether the organization used its resources to counteract that harm.'" *Id.* (quoting *PETA*, 797 F.3d at 1094) (alterations adopted); *accord Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017). The first step tests whether "the defendant's conduct perceptibly impaired the organization's ability to provide services." *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) (quotations omitted). The D.C. Circuit has expressed this test in various ways, "but they all focus on the same point: the organization's tasks must be impeded" by the agency's action or omission. *Ctr. for Responsible Sci. v. Gottlieb*, 346 F. Supp. 3d 29, 37 (D.D.C. 2018) (citing cases). The Court does not proceed to the second step— whether the organization used its resources to counteract the agency's action—unless the organization satisfies the first step. *See id.* at 40 (noting the "settled law in this Circuit that an organizational plaintiff must first show that the challenged conduct made its activities more difficult").

Here, this Court need not proceed to the second step of the analysis because Plaintiff has identified *no* organizational activities or daily operations that the Rebate Rule has impeded. Rather, Plaintiff merely alleges in general terms that "the interests here are germane to PhRMA's mission as the industry's principal policy advocate, representing its members' interests in matters before Congress, the Executive Branch, state regulatory agencies and legislatures, and the courts." Compl. ¶ 67. This is wholly inadequate. PhRMA does not even allege that its interests have been impaired by the Rule, which would still fall short, since "'organizations . . . that merely allege that their mission has been compromised'" have not suffered an injury-in-fact. *Weingarten v. Devos*, 468 F. Supp. 3d 322, 334 (D.D.C. 2020) (quoting *Food & Water Watch,*

12

*Inc.*, 808 F.3d at 919 (internal quotation marks omitted)); *Freedom Watch*, 442 F. Supp. 3d at 188 (no organizational standing where the complaint "does not reference any injury in fact that is specific to Freedom Watch as an organization").

Indeed, if an organization could claim standing merely because a rule might conflict with the interests for which it advocates, then any claimant with a generalized interest in a problem could have standing, eviscerating the crucial Article III limits that confine courts to their proper judicial role. *See TransUnion*, 141 S. Ct. at 2203; *see also Int'l Acad. of Oral Med. & Toxicology v. U.S. Food & Drug Admin.*, 195 F. Supp. 3d 243, 256 (D.D.C. 2016) (noting that a court has to ask "whether the injury relates to the organization's mere advocacy objectives or if, instead, it undermines the organization's direct, non-advocacy services"). Plaintiff's paltry allegations about the impact of the Rebate Rule on itself as an organization fall well short of the organizational standing test.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety.

13

Dated: September 1, 2021

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General

ERIC BECKENHAUER
Assistant Branch Director
Civil Division

/s/ *Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
(*Admitted in New York*)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0845
Fax: (202) 616-8470
E-mail: vinita.b.andrapalliyal@usdoj.gov

*Attorneys for Defendants*